UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| LYNN M. STOUTEN, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | Case No. 1:09-cv-424 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| _____ | ) | |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB). On November 29, 2005, plaintiff filed her application for DIB benefits alleging a September 1, 2003 onset of disability. (A.R. 78-80). Her disability insured status expired on December 31, 2003. (A.R. 19, 96). Thus, it was plaintiff's burden to submit evidence demonstrating that she was disabled on or before December 31, 2003. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff's claim was denied on initial review. On June 12, 2008, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 592-617). On August 25, 2008, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 17-24). On March 13, 2009, the Appeals Council denied review (A.R. 6-8), and the ALJ's decision became the Commissioner's final decision.

On May 11, 2009, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claim for DIB benefits. She raises the following issue:

> By failing to include migraine headaches as a severe impairment, the [ALJ's d]ecision neglected an important impairment in the assessment of Ms. Stouten's ability to work as of December 31, 2003.

(Plf. Brief at 1, docket # 10). Upon review, I find that plaintiff's argument does not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial

evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## **Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from her alleged onset of disability of September 1, 2003, through December 31, 2003, but not thereafter. Plaintiff had not engaged in substantial gainful activity on or after September 1, 2003. (A.R. 19). The ALJ found that through her date last disability insured, plaintiff had the following severe impairments: "degenerative disc disease of the thoracic and lumbar spine and depression." (A.R. 19). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 20). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[,] except that as a result of claimant's testimony as to the limitations from her depression, the claimant is found to be further limited to unskilled work.

(A.R. 20). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible:

> The claimant testified at the hearing that she began to experience pain in her back in September 2003 after falling . . . . She admitted that she did not seek treatment for depression until sometime in 2004. She sought and received treatment for her headaches in 2008. She has a valid driver's licence and drives. She stated that she was told by her doctors that she was addicted to her pain medications in about December 2004. She has not taken any narcotic pain medications since October 2007. She has not noticed any difference in her pain since being off of the narcotic medications. The claimant testified that she has pain every day in her lower back which radiates down both legs. Her pain is a 9 out of 10 in severity. She has migraine headaches almost daily. She currently weighs her normal weight of about 149 pounds. She stated that she is losing weight because she does not eat due to not feeling well. [A.R. 595-608, 612-14].
>
> * * *
>
> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.
>
> In terms of the claimant's alleged back impairment, the evidence reveals that the claimant has only mild degenerative disc disease with no signs on any objective testing of signs of radiculopathy. The record documents that the claimant has had severe complaints, and did have those complaints prior to the date last insured, however, it is also noted that the claimant has not had any treating source opine that she is unable to perform all basic work-related activities as a result of her back impairment. The claimant has sought and received therapy and medications for her pain. She has been noted by treating sources as having a dependency on her narcotic medications. The record does not contain any significant objective evidence which shows that the claimant is unable to perform light work on an exertional basis. The orthopedic specialist who examined the claimant in November 2005 did not find any significant neurological abnormalities and opined that there was a psychological component to the claimant's pain. I find that the opinion of the medical expert at the hearing, Dr. Stevens[,] is supported by the record as a whole and is accorded

significant weight. Dr. Stevens opined at the hearing that the claimant had the physical and exertional ability to perform light work.

The evidence shows that the claimant does have severe depression. She has been found to have a long history of depression. The record reveals little in the area of severe complaints. The record reveals that the claimant only recently began to have complaints of severe depression. The treating psychiatrist, Dr. Perkins, reveals that the claimant did not experience any acute symptoms and her treatment with Dr. Perkins did not begin until April 2004[,] subsequent to the claimant's date last insured. I find that the evidence of record does not support a finding that the claimant was precluded from all basic work-related activities as of her alleged onset date of September 1, 2003. The claimant did have some depression as of the date last insured, however, there is no evidence that the claimant's daily activities, social functioning, or ability to maintain concentration, persistence and pace were markedly restricted as of that date or as of the date last insured. I find that the record in this matter supports a finding that on a non-exertional basis, the claimant was limited to unskilled work as of the alleged onset date of disability. Thus, the evidence supports a finding that as of the alleged onset date of disability and as of the date last insured under Title II of the Act (December 31, 2003), the claimant had the ability to perform unskilled[,] light work.

(A.R. 22-23). The ALJ found that plaintiff was not disabled at Step 4 of the sequential analysis because, through her date last disability insured, plaintiff was capable of performing her past relevant work as an office cleaner.[1] (A.R. 17-24).

---

[1] "Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009); *see Lindsley v. Commissioner*, 560 F.3d 601, 602-03 (6th Cir. 2009).

**1.**

Plaintiff argues that the ALJ committed reversible error by not finding that her migraine headaches were a severe impairment. (Plf. Brief at 1, 7). The ALJ found at Step 2 of the sequential analysis that plaintiff had the severe impairments of "degenerative disc disease of the thoracic and lumbar spine and depression." (A.R. 19). The existence of at least one severe impairment is a threshold finding, allowing the sequential analysis to continue to Step 3. An ALJ's failure to find additional severe impairments at Step 2 is "legally irrelevant." *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2009); *see Nejat v. Commissioner*, 359 F. App'x 574, 576-77 (6th Cir. 2009); *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

**2.**

Plaintiff argues that the ALJ's decision should be overturned because the ALJ's opinion "never mentions the records of the Diamond Headache Clinic." (Plf. Brief at 8). The ALJ's failure to mention the clinic's name is not a basis for overturning the Commissioner's decision. "[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Commissioner*, 152 F. App'x 485, 489 (6th Cir. 2005); *see Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004); *accord*, *Van Der Mass v. Commissioner*, 198 F. App'x 521, 526 (6th Cir. 2006).

Plaintiff alleged a September 2003 onset of disability. She testified that her primary problem was back pain experienced after falling down some basement stairs in September 2003. (A.R. 596, *see* A.R. 161). The September 26, 2003 MRI of her lumbar spine showed "[m]ild disc

degenerative change" with "no evidence of frank disc protrusion, significant spinal stenosis, fracture or any incidence of malignancy." (A.R. 262, 322, 420). She confirmed that she received treatment for a kidney stone in September 2003. (A.R. 596). Her medical records indicate that she "left the hospital before actual discharge" because the staff "suspected her of falsifying her symptoms in order to receive Dilaudid," a potent schedule II controlled opioid agonist.[2] (A.R. 264). Her October 2003 CT scan showed a "[s]table tiny left renal calculus" and "[n]o ureteral calculi or obstructive uropathy." (A.R. 321, 415, 419). The November 2, 2003 CT scan of plaintiff's thorax returned normal results. (A.R. 318, 416). A December 6, 2003 MRI showed "diffuse degenerative disc disease." (A.R. 161). Her EMG was negative for radiculopathy and her bone scan was essentially normal. (A.R. 161). Plaintiff's disability insured status expired on December 31, 2003. Her March 9, 2004 cervical spine MRI was normal. (A.R. 227, 349). Her March 9, 2004 brain MRI returned normal results. (A.R. 350).

The ALJ questioned plaintiff regarding the treatment she had received at the Diamond Headache Clinic:

> Q   . . . [I]t looks like in the end of '05 through the beginning of '08 you were seeing Dr. Freitag (Phonetic) at the Diamond Headache Clinic, I believe, here in Chicago?
>
> A   Yes.
>
> Q   Ha[d] you been seeing anybody for your headaches before you came to the Diamond Headache Clinic?
>
> A   I saw someone, a pain doctor, here in Grand Rapids for injections for the headaches at Metropolitan, and I had injections in the back of my head.
>
> Q   Was that after you fell down the steps or was that before?

---

[2] PHYSICIANS' DESK REFERENCE, 2797 (64th ed. 2010).

| | | |
|---|---|---|
| A | | That was before. Tom and I were just talking about that, and I can't remember his name. |
| Q | | And then it looks like at the end of 2004, I believe you were standing on a plastic chair, and the one chair leg broke? |
| A | | Yes. |
| Q | | And I take it that caused your pain to get much worse in your back th[e]n, is that correct? |
| A | | Yes. |
| Q | | And then it looks like in November of '05 you were involved in a motor vehicle accident? Do you recall that? |
| A | | I don't. |
| Q | | Do you recall when it was that you started taking narcotic pain medications? |
| A | | I remember that Dr. Junega (Phonetic) gave me, or Dr. Feenstra (Phonetic) started giving me, no. Dr. Reseekus (Phonetic), who was my initial primary care physician, started giving me pain medication for the back problem, or for migraine headaches. |
| Q | | And was that before you had the fall down the stairs? |
| A | | Yes. And then I had the fall down the stairs. This was quite some time later, and then I went to see Dr. Juneja, and then he, no, I went to see Dr. Feenstra, and then he gave me a Fentanyl [sic] patch for my back, and then that wasn't helping. So then I went to see Dr. Juneja, and Dr. Juneja started giving me the pain medication. He referred me to Dr. Juneja. |

(A.R. 597-99).

Plaintiff argues that she began receiving treatment at the Diamond Headache Clinic in 1997 and that the records received by the Social Security Administration were only the "tip of the iceberg." (Plf. Brief at 2). This argument does nothing to advance plaintiff's claim. The court must work with the administrative record it has, not some hypothetical record that plaintiff might have created if she had submitted records dated years before her alleged onset of disability.

Almost all of the records from the Diamond Headache Clinic that plaintiff submitted in support of her claim for DIB benefits are dated after December 31, 2003. (A.R. 355-64, 537-45). The few records dated before plaintiff's date last disability insured support the Commissioner's decision. May 13, 2003 progress notes reveal that plaintiff was in violation of the clinic's "opioid contract" because she was receiving Vicodin[3] from two other sources. (A.R. 373). On June 16, 2003, plaintiff was warned that she would be discharged as a patient if another violation occurred. (A.R. 372). On July 7, 2003, plaintiff complained of vomiting and diarrhea and she asked for Vicodin. (A.R. 371). September 27, 2003 progress notes contain emphatic instructions not to refill, allow, or restart plaintiff's Vicodin prescription. (A.R. 368). A physician's assistant's notes for November and December of 2003 state that plaintiff was receiving Vicodin and Percocet.[4] (A.R. 364-66).

On March 23, 2004, plaintiff informed doctors at the Mayo Clinic that her migraine headaches were "well controlled[,] but got worse with the start of Percocet just recently -- November 2003." (A.R. 169). Two months later, Dr. Feenstra noted that plaintiff was taking as many as 6 or 7 doses of Percocet per day.[5] She was not having "any particular problem with migraines at this point." (A.R. 328).

---

[3] Vicodin contains the opioid analgesic hydrocodone. The PHYSICIANS' DESK REFERENCE contains extensive warnings regarding the danger of addiction to Vicodin and other opioids. *Id.* at 560-61.

[4] Percocet tablets contain oxycondone. Oxycondone is a pure opioid agonist of the morphine-type. PHYSICIANS' DESK REFERENCE at 1121.

[5] The ALJ found that plaintiff was not disabled at Step 4 of the sequential analysis. Thus, he never reached the point of the sequential analysis where it would have been necessary to make a finding whether plaintiff's prescription drug abuse was material to a finding of disability. 20 C.F.R. § 404.1535.

I find no basis for disturbing the Commissioner's decision on this basis.

**3.**

Plaintiff argues that the ALJ did not adequately address her testimony regarding her headaches. (Plf. Brief at 8). She testified, "I have headaches daily. Migraines probably three times a week, but I have to work through them." (A.R. 604). She stated that she prefers to lie down in a dark, quiet room for headache relief. (A.R. 605-06). She testified that she was not taking any pain medications for headaches, but she was taking Topamax as a "preventative medication for migraines." (A.R. 606). She testified that when she was taking pain medications she did not experience migraine headaches. (A.R. 606). The ALJ's opinion contains a lengthy paragraph summarizing plaintiff's testimony. (A.R. 21). Among other things, the ALJ noted that plaintiff claimed she suffered from daily headaches and that she was told by her doctors in December 2004 that she was addicted to pain medications. Plaintiff was able to drive a car on a daily basis and did not seek treatment for depression until 2004. Plaintiff's disagreement with the ALJ factual finding regarding her credibility does not provide a basis for disturbing the Commissioner's decision.

Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See, e.g.*, *Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see McGlothlin v. Commissioner*, 299 F. App'x 516, 523-24 (6th Cir. 2008). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of

Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009). It was appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). I find that the ALJ's credibility determination is supported by more than substantial evidence.

**4.**

Plaintiff argues that the ALJ's opinion's reference to fibromyalgia (A.R. 19) was erroneous, and that it suggests that the ALJ's decision was a sloppy "re-working" of an earlier decision:

The Decision also baldly asserts that fibromyalgia is not a severe impairment (AR: 19) when fibromyalgia was never even alleged. When Ms. Stouten applied for benefits, she alleged "Back problems, depression, headaches and high blood pressure" as her impairments (AR: 138). She never alleged fibromyalgia. It is a puzzle why the Decision interjects fibromyalgia into the case. Perhaps the ALJ was re-working a prior Unfavorable Decision and forgot to edit out the fibromyalgia.

(Reply Brief at 1-2; *see* Plf. Brief at 7-8). This argument is frivolous. The record reveals that on September 1, 2005, plaintiff gave a medical history which included "being diagnosed with fibromyalgia in the past." (A.R. 299). I find no error.

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: June 29, 2010            /s/ Joseph G. Scoville
                                United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).